UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 15bk12654 |
| | ) | |
| In re Bruce K. Propst, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

The matter before the court comes on for consideration on the Motion to Avoid Judicial Lien Related to Real Estate Commonly Known as 1892 Liberty Court, Elk Grove Village, Illinois Pursuant to 11 U.S.C. [§] 522(f) as to Robert S. Clark [Dkt. No. 52] (the "<u>Motion</u>") filed by debtor Bruce K. Propst (the "<u>Debtor</u>").

While the relief requested might be considered ordinary under other circumstances of another case, under the circumstances of this case, the relief is both extraordinary and problematic. The Debtor previously reopened the case and sought avoidance of the same judicial lien four years after the case first closed.  Though that motion went through a complicated procedure in part due to the debtor's previous counsel's errors, it was ultimately heard on its merits and denied.  No reconsideration was sought or appeal taken.  It is now nearly two years later and too late to seek reconsideration by the ordinary means.  While the court might be able to entertain the request as an independent action, the Debtor has failed to demonstrate that the court should exercise its discretion and ignore the law of this case to do so.

As a result, the Motion will be DENIED.  Because there is no conceivable manner in which the Debtor could revisit these same issues without running afoul of the concerns voiced herein, that denial will be expressly with prejudice.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>").  28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy judges for their districts.  28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy judges must therefore determine, on motion

or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 462 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

A motion to avoid a judicial lien under section 522(f) of the Bankruptcy Code is clearly within a bankruptcy court's jurisdiction, statutory authority and constitutional authority. Such a motion may only arise in a bankruptcy case and is expressly a core proceeding. 28 U.S.C. § 157(b)(1); *see also* 28 U.S.C. § 157(b)(2)(A) & (K). The bankruptcy courts may enter final judgment with respect thereto. *In re Quade*, 482 B.R. 217, 221 (Bankr. N.D. Ill. 2012) (Barnes, J.), *aff'd in part,* 498 B.R. 852 (N.D. Ill. 2013). Because motions to avoid judicial liens originate under the Bankruptcy Code, determination of such motions is within the constitutional authority of the bankruptcy courts. *Stern,* 564 U.S. at 475; *In re Yotis*, 518 B.R. 481, 483 (Bankr. N.D. Ill. 2014) (Schmetterer, J.).

It follows that the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion.

BACKGROUND

As noted at the outset, the Motion in this case arises in a difficult context. While the context is difficult, the facts and history of this matter are relatively straightforward.

A.    The Debtor's Initial Filings

The Debtor commenced the above-captioned chapter 7 case on April 9, 2015. At the time, the Debtor was represented by attorney R. Winston Slater ("Slater"). By the docket, the administration of the case was uncomplicated. A trustee was appointed, the meeting under section 341 of the Bankruptcy Code was conducted and the trustee filed a report of no assets. By July of 2015, the Debtor had received a discharge and the case was closed.

Of worth noting in the case is that the Debtor scheduled his principal residence, 1892 Liberty Court, Elk Grove Village, IL (the "Residence") with a value of $330,000.00. Voluntary Petition [Dkt. No. 1] (the "Petition"), Sch. A. While the Debtor scheduled secured claims, only one appears to be against the Residence. That claim, what the court presumes to be by the mortgage

2

lender, Loancare Servicing Ctr, was in the amount of $301,644.00 (the "Mortgage").  Pet., Sch. D.
Robert S. Clark ("Clark") is scheduled as holding a $95,000.00 unsecured claim from a contract
dispute.  Pet., Sch. F.  Unsurprisingly, in light of the scheduling, no relief was sought by Slater under
section 522(f) of the Bankruptcy Code.[1]

B.       The First Case Reopening

        Over four years after the Debtor was discharged and the case closed, the Debtor through
separate counsel, Philip F. Maksymonko ("Maksymonko"), sought to reopen the case and avoid a
putative judicial lien held by Clark (the "Clark Lien").  *See* Motion to Reopen [Dkt. No. 16] (the
"First Reopen Motion").  The First Reopen Motion was filed without a notice of motion and was
scheduled by Maksymonko for a day on which the undersigned hears only chapter 13 matters.  The
hearing on the First Reopen Motion was therefore stricken, *see* Dkt. No. 17, and Maksymonko was
notified by the Clerk's Office to correct and refile the First Reopen Motion.  Dkt. No. 18.

        Maksymonko then filed a new Motion to Reopen [Dkt. No. 19] (the "Second Reopen
Motion").  The Second Reopen Motion was, however, defective in a number of ways.  It failed to
include a proposed order as required by Local Rule 9013-1(C)(5),[2] it was not double-spaced as
required by Local Rule 5005-3(C)(2) and it failed to be accompanied by a certificate of service as
required by Local Rule 9013-1(C)(3).  As a result, the court denied the Second Reopen Motion
without prejudice, notice or a hearing.  Order [Dkt. No. 20]; *see also* Local Rule 9013-1(G).

        Undaunted, Maksymonko tried again, filing a newer still Motion to Reopen [Dkt. No. 21]
(the "Third Reopen Motion").  As with the Second Reopen Motion, the Third Reopen Motion failed
to comply with Local Rule 9013-1(C)(5).[3]  Nonetheless, the court determined that the best way to
prevent ongoing errors was to hear the Third Reopen Motion in spite of them.  The court therefore
allowed the hearing scheduled by Maksymonko for December 10, 2019 (the "Initial Hearing") to go
forward.

        While the court does not do so for every attorney appearing before it, as Maksymonko was
unfamiliar to the court and given his repeated errors, prior to the Initial Hearing, the court *sua sponte*
sought to confirm Maksymonko's status as an attorney authorized to practice before it.  It is worth
noting here that this court has no bar qualifications or admission process.  Attorneys practicing
before it must only be members in good standing of the bar of the United States District Court for
the Northern District of Illinois.

        What the court discovered was concerning—that Maksymonko was not a member in good
standing of the District Court bar.  Apparently Maksymonko was suspended from practice by the
State of Illinois on January 23, 2003.  As a result, he was reciprocally suspended by the District

---

[1]        In the Reopen Motion (defined below), the Debtor states that Slater retired from the practice of law
"[a]fter the Debtor received a Discharge in this bankruptcy case."  Reopen Mtn., at ¶ 7.

[2]        Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local
Rules" and as to each, "Local Rule ____").

[3]        Unlike in the Second Reopen Motion, Maksymonko did, in the Third Reopen Motion, file a
proposed order.  *See* Dkt. No. 24.  That order was nonetheless not in the form required by the Local Rules.
*See* Local Rule 9013-1(C)(5)(a).

Court on March 6, 2003. While Maksymonko had returned to practice in Illinois, he had not petitioned the District Court to lift the reciprocal suspension and thus remained unauthorized to practice before it (or this court, by extension).

At the Initial Hearing, the court informed Maksymonko of this and discussed with him the previous errors. The court explained that if the Debtor wanted relief from the court, his counsel must first and foremost be entitled to seek such relief. To afford the Debtor this chance, the court did not deny the Third Reopen Motion for this reason, but instead denied it without prejudice for its procedural violations. Order [Dkt. No. 25]. Maksymonko was instructed to fix his admission status and thereafter to remake his request in a manner that complied with the Local Rules.

That same day, Maksymonko apparently visited the District Court and was reinstated. What followed then was his fourth attempt, *see* Motion to Reopen [Dkt. No. 28] (the "Fourth Reopen Motion"). Maksymonko unfortunately repeated his errors with respect to the proposed order. *See* Dkt. No. 31.

Given the progress he had made, the court determined to hear the Fourth Reopen Motion in spite of the errors. The court therefore allowed the hearing scheduled by Maksymonko on the Fourth Reopen Motion for December 18, 2019 (the "Second Hearing") to go forward. Prior to the Second Hearing, Maksymonko also filed a Motion to Avoid Lien [Dkt. No. 29] (the "Avoidance Motion") and a half-page Memorandum in Support [Dkt. No. 30] (the "Memorandum"). Maksymonko repeated his errors with respect to the required notice of motion and proposed order with respect to the Avoidance Motion. The Avoidance Motion and the Memorandum were also scheduled to be heard at the Second Hearing.

At the Second Hearing, Maksymonko again appeared. The court once again discussed the procedural issues but, in the absence of any objections, upon Maksymonko's showing of proper notice at the Second Hearing and as is common with unopposed routine motions,[4] both the Fourth Reopen Motion and the Avoidance Motion were granted by default. Order [Dkt. No. 34] (the "Combined Order"). The case was thereafter reclosed by the Clerk's Office. Dkt. No. 35.

C.      Reconsideration

Almost immediately following the Second Hearing, Clark sought reconsideration of the Combined Order. *See* Motion to Vacate [Dkt. No. 36]. Clark sought a hearing on January 8, 2020, and notified both the Debtor and Maksymonko of the same. *Id.* Clark's counsel, Jeffrey A. Meyer ("Meyer"), however, also failed to file a proper form of order and was notified by the Clerk's Office to correct the filing. Dkt. No 37.[5] As a result, Meyer fixed the error and amended his notice of motion to seek a hearing instead on January 21, 2020 (the "Reconsideration Hearing"). Notice of

---

[4]      Motions to avoid judicial liens are identified as motions that will ordinarily granted without hearing in the absence of an objection in the Local Rules. Local Rule 9013-9(B)(4).

[5]      The Motion to Vacate was also single-spaced in parts and double-spaced in parts, in violation of Local Rule 5005-3(C)(2).

the Reconsideration Hearing was also sent to the Debtor and Maksymonko.  At no time does it appear as if notice was given to Slater by the parties.[6]

At the Reconsideration Hearing, only Meyer appeared.  Meyer argued that he had appeared by telephone on behalf of Clark at the Second Hearing but, due to an error by the telephonic hearing service provider, had been unable to make himself heard.  Meyer also argued that, had he been able to speak at the Second Hearing, he would have stated that the Avoidance Motion was defective on its face, as it both failed to support the value of the Residence asserted by the Debtor and, worse, assuming such value, failed to establish the requisites for avoidance under section 522(f).  The Avoidance Motion and Memorandum also never specifically identified the Clark Lien and its amount.

As a result of Clark's denial of a meaningful opportunity to be heard on the Avoidance Motion, the court granted the Motion to Vacate, reinstated the Debtor's Avoidance Motion and set briefing on the same.  Order Vacating Orders Entered on December 18, 2019 [Dkt. No. 44] (the "Reinstatement and Scheduling Order").

In compliance with the Reinstatement and Scheduling Order, Clark filed an Objection to Motion to Avoid Lien [Dkt. No. 45] (the "Objection").  Notice of the Objection was given to Maksymonko, but not for some reason to the Debtor.  In the Objection, Clark articulated why the value of the residence asserted by the Debtor in the Avoidance Motion made the relief unavailable to the Debtor, as follows:  While the Debtor in the Avoidance Motion and Memorandum had offered no support therefor, the Debtor had in the Memorandum asserted that the Residence was worth $450,000.00. *See* Mem.; Obj., at ¶ 10.  Given the Mortgage of $301,644.00 and a homestead exemption of $15,000.00,[7] *see* 735 ILCS 5/12-901, that leaves $145,000.00 in approximate equity under which the Clark Lien could shelter.  As the Clark Lien amounted to $92,054.53,[8] the requisites

---

[6]     Once an attorney has appeared in a matter before the court, the appearance of another attorney appearing for the same client does not constitute withdrawal of the prior attorney.  Local Rule 2090-5(A)(4).  Only compliance with Local Rule 2091-1 constitutes such a withdrawal.  *Id.*  As the record of this case indicates no such compliance, Slater, Maksymonko and the counsel who filed the Motion at bar all continue to represent the Debtor in this case.

The Local Rules further provide that all "Registrants" are considered electronically served with documents when filed electronically.  Local Rule 9013-1(D)(4) ("[E]lectronic filing of a document constitutes service on any person who is a Registrant entitled to file documents using CM/ECF and who has filed a document in the case in electronic format via CM/ECF.").  Slater, Maksymonko and the counsel who filed the Motion are all Registrants as defined in the Local Rules, *see* Local Rule 1000-1(15), as each has used the CM/ECF system to file documents in the case.  As such, Slater, Maksymonko and the counsel who filed the Motion at bar would have, in addition to whatever notice was given by the parties, received service via CM/ECF of all motions, orders and other filings made in the case during the time of their appearances.

[7]     The Debtor failed to schedule such an exemption.  *See* Pet., Sch. C.  However, no party has asserted that the Debtor could not amend his schedules to claim such an exemption.  *See* Fed. R. Bank. P. 1009(a).

[8]     While Maksymonko never identified the Clark Lien with specificity and never asserted the amount of the Clark Lien, Clark asserts that its value is $83,832.70.  Mtn. to Vacate, at ¶ 3.  In support of the same, Clark attaches as Exhibit A to the Motion to Vacate a copy of the Memorandum of Judgment from the Circuit Court of the Twenty-Third Judicial Circuit, Dekalb County, Illinois, setting forth the judgment amount of $83,832.70, plus $759.00 costs, plus $7,462.83 in attorneys' fees.  Mtn. to Vacate, Exh. A.

for section 522(f) avoidance had not been met.  Even if the Debtor had been entitled to double the homestead exemption as he had claimed, the numbers asserted by the Debtor in the Memorandum did not support avoidance.

Though afforded an opportunity to reply in the Reinstatement and Scheduling Order, the Debtor did not.  Further, no one for either party appeared at the hearing set under the Reinstatement and Scheduling Order for March 17, 2020.  Though the court had been prepared to rule on that date, the court continued the hearing to March 23, 2020, in order to give each party a second opportunity to appear.  Concerned with the lack of appearance, the court instructed its deputy to call each counsel and remind him of the continued hearing.

On March 23, 2020, Meyer was the only person to appear.  At the hearing, the court took up the Avoidance Motion, Memorandum and Objection on their merits.  The court orally issued a detailed ruling under section 522(f), concluding that the Debtor had pled himself out of the relief he had sought as the numbers alleged by him simply did not support avoidance under the express requirements of the statute.

D.      The Second Case Reopening and the Motion

Over a year and one-half later, the Debtor through new counsel sought reopening of the case, Motion to Reopen Chapter 7 Bankruptcy Case to Hear Motion to Avoid Lien as to Robert S. Clark and 1892 Liberty Court, Elk Grove Village, Illinois [Dkt. No. 51] (the "Reopen Motion"), and sought through the Motion to avoid the Clark Lien.  Though Clark, appearing once again through Meyer, opposed the Reopen Motion, in the undersigned's absence, the Reopen Motion was granted by another judge of this court.  Order Reopening Chapter 7 Bankruptcy Case to Hear Motion to Avoid Lien as to Robert S. Clark and 1892 Liberty Court, Elk Grove Village, Illinois [Dkt. No. 57].

At the same time, that same judge scheduled the Motion for briefing.  Order [Dkt. No. 56]. In compliance with the deadlines set, Clark filed his Response to Debtor's Motion to Avoid Lien Related to Real Estate Commonly Known as 1892 Liberty Court, Elk Grove Village, Illinois Pursuant To 11 U.S.C. [§] 522(f) as to Robert S. Clark [Dkt. No. 59] (the "Response") and in reply the Debtor filed his Reply to Response to Debtor's Motion to Avoid Lien Related to Real Estate Commonly Known as 1892 Liberty Court, Elk Grove Village, Illinois Pursuant To 11 U.S.C. [§] 522(f) as to Robert S. Clark [Dkt. No. 60] (the "Reply").

In the Motion, rather than seek to have the court reconsider its earlier ruling, the Debtor seeks instead to raise the issue of section 522(f) avoidance anew.  He alleges a different value for the Residence as of the petition date, this time $306,000.00, and supports that allegation with an appraisal report.  *See* Appraisal of Real Property [Dkt. No. 58] (the "Appraisal").

---

The Motion to Avoid, on the other hand, asserts that the Clark Lien is $92,054.53 (the total of the judgment amount, costs and attorneys' fees), but provides only the judgment amount and costs individually. *See* Mtn., at ¶¶ 15(b) & 18.

As Clark has failed to explain why the lien would not cover the entirety of the judgment, as the Debtor seems to accept the total amount as being the value of the lien and as the result is unchanged, the court will assume the Clark Lien encompasses the entire award and amounts to $92,054.53.

Though the Response points out the obvious, that the Motion has all the appearances of a motion to reconsider the court's prior ruling on the Avoidance Motion, neither the Debtor's Motion nor his Reply addresses this point head on. While the Motion alludes to the Debtor being uninformed of the court's earlier rulings and states without support that Maksymonko was not practicing at the time the court vacated the Combined Order, set the matter for briefing and ultimately ruled on the merits of the Debtor's request in the Avoidance Motion, the Debtor makes no reference in either the Motion or the Reply to either Rule 60[9] or the law of this case.

At the hearing on the Motion on January 10, 2022, the court questioned the Debtor's new counsel on the requirements of Rule 60 and suggested that he consider further whether former counsel's actions might give rise to a separate cause of action. Meyer appeared and argued, as he did in the Response, that the time for Rule 60 relief had long since expired. The court also asked Debtor's counsel to consider why the Debtor should be entitled to seek the relief again given the law of the case. The court continued the matter to January 31, 2022 (the "Last Hearing"), to afford the Debtor an opportunity to address these concerns.

On January 31, 2022, the court conducted the Last Hearing on this matter, where it once again asked counsel for the Debtor to address the foregoing concerns. Counsel argued, as it did in the Reply, that this is a separate action and is not subject to the time constraint under Rule 60. Counsel failed, however, to address in a meaningful way why the law of the case should not apply. His only argument relating thereto was that the Debtor had been "denied his day in court." Of particular concern, the Debtor's new counsel stated at the Last Hearing that he had contacted Maksymonko and requested he appear at the Last Hearing and that Maksymonko, having a matter in another court that day, declined. At the conclusion of the Last Hearing, the court took this matter under advisement.

This Memorandum Decision constitutes the court's ruling on the matters so taken under advisement. In making this determination, the court has considered the arguments of the parties at the various hearings and has reviewed the parties' prior filings, the court's prior rulings in this matter, the Motion, the Appraisal, the Response and the Reply. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

DISCUSSION

A request to avoid a judicial lien under section 522(f) of the Bankruptcy Code is a routine matter. Not only does it not require the more stringent lien avoidance requirements of an adversary proceeding, but, at least in the Northern District of Illinois, a motion making such a request is treated as routine and, in the absence of an objection, may be granted without a hearing. Local Rule 9013-9(B)(4).

---

[9]     Rule 60 of the Federal Rules of Civil Procedure (the "Civil Rules" and as to each, "Rule ___") (made appliable in this proceeding under Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and as to each, "Bankruptcy Rule ___")).

When heard on its merits, such a motion requires little more than a straightforward mathematical calculation. *See, e.g.*, *In re Snyder*, 279 B.R. 1, 5 (B.A.P. 1st Cir. 2002) (section 522(f) provides a "simple arithmetic test"); *see also* H.R. Rep. No. 103–834, 103rd Cong., 2nd Sess. 41–42 (1994); 140 Cong. Rec. H10770 (Oct. 4, 1994). Because of its simplicity, the court has little or no discretion when making a determination under section 522(f). *Snyder*, 279 B.R. at 5; *In re Bowshier*, 389 B.R. 542, 549 (Bankr. S.D. Ohio 2008) ("It would run counter to the intent of Congress for this court to inject the uncertainty of equitable principles and abstract theories into a clearly worded statute designed for formulaic precision.").

Here, no one questions that the Debtor brought a motion that failed that calculation. The Debtor in the Memorandum asserted that the Residence was worth $450,000.00. *See* Mem.; Obj., at ¶ 10. As discussed above, using that number, the amount of the Mortgage and the Illinois homestead exemption, the Residence would have $145,000.00 in approximate equity under which Clark's $92,054.53 lien could shelter.[10] The requisites for section 522(f) avoidance were not met by the Debtor under the Avoidance Motion and supporting Memorandum and, as such, the Avoidance Motion was denied on its merits.

The Debtor now, more than a year and one-half after that ruling, seeks to revisit the avoidance of the very-same Clark Lien. Clark argues, and for the reasons discussed below, the court agrees, that it is too late to seek reconsideration under Rule 60. Cleverly, however, the Debtor argues that this is not a reconsideration motion, despite the Motion bearing all the hallmarks of the same. That argument, however, flies in the face of the law of the case and the Debtor has failed to convincingly explain why the court should allow a party a second bite at the same apple.

The court will consider each issue in turn.

A.    <u>Reconsideration under Rule 60</u>

As noted above, the Motion has all the hallmarks of a motion for reconsideration. The Debtor argues that he was denied due process regarding the court's rulings on the Motion to Vacate and the rehearing on the Avoidance Motion and Memorandum. In essence, the Debtor argues that he was not informed by Maksymonko that the court's first ruling on the Avoidance Motion had been vacated and that a new hearing had been set, and that as a result he was denied a meaningful opportunity to be heard on the issue. The Debtor therefore believes he is entitled to a new hearing on the merits of the underlying request.

This, in any other circumstances, would be a motion for reconsideration brought under Rule 60(b)(1) or, perhaps under Rule 60(b)(6). But if done in that manner, such an approach would fail for multiple reasons.

First, the Debtor is simply misguided in his argument that he was denied due process with respect to the court's rulings on the Motion to Vacate and the rehearing on the Avoidance Motion

---

[10]    Again, though Maksymonko never identified the Clark Lien with specificity and never asserted the amount of the Clark Lien, the court accepts that it is valued at $92,054.53. *See supra*, n.7. It is worth noting that, had the Debtor chosen to rely on the scheduled value of the Residence and had the court found that value to be correct, the Debtor would have been entitled to avoid most of the Clark Lien under the same calculation.

and Memorandum.  As noted above, the Debtor was personally noticed with the Motion to Vacate. The Motion does not explain why or how that personal notice failed.  Everything that happened after that happened in hearings scheduled in open court following that notice.  The Debtor clearly, therefore, had the opportunity to know about the hearings and the court's orders.  *See Snyder v. Barry Realty, Inc.*, 60 F. App'x 613, 615 (7th Cir. 2003) (where the Court of Appeals condoned the District Court's conclusion that, while the party did not get direct notice, it could have learned about a matter "through other means within their control.").  So, even absent a consideration of the attorneys' role in this matter, the Debtor should have known of the Motion to Vacate, the result of the hearing on the Motion to Vacate and the subsequent deadlines and hearings.

But that is putting aside the attorneys' role.  At the time the Motion to Vacate was before the court, the Debtor had not one, but two attorneys of record representing him.  He thus had two additional avenues of information—Slater and Maksymonko.  Each had notice, either personally and/or electronically, of the hearings and orders in this matter.  So, each had an opportunity to respond, to attend the hearings and to inform the Debtor.  Neither apparently did.

Thus, even had the personal notice to the Debtor of the Motion to Vacate failed, the Debtor is bound by both the actions and inactions of his counsel.  "[A] party who chooses his counsel freely should be bound by his counsel's actions."  *Deppe v. Tripp*, 863 F.2d 1356, 1360 (7th Cir. 1988); *see also United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994) ("The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds.  So much is clear for an attorney's willful misconduct.  It is equally clear for negligent errors.") (citations omitted).  The Debtor therefore had his day in court, despite his contentions otherwise.

Second, the Debtor's counsels' inaction in this matter would also defeat a request under Rule 60(b)(1), even if such a request were timely.  The Seventh Circuit hinted as much in *7108 W. Grand Avenue*, above.  It made this clearer in *United States v. Di Mucci*, 879 F.2d 1488 (7th Cir. 1989), where it stated that "we agree with the district court that it makes no difference whether we are talking about the Rule 60(b) context or the Rule 55(c) context.  It seems clear to us that the law in this circuit is that an attorney's conduct must be imputed to his client in *any* context." *Id.* at 1496. To the extent the foregoing left any doubt, the Seventh Circuit removed the same when it stated that "counsel's negligence, whether gross or otherwise, is *never* a ground for Rule 60(b) relief."  *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1118 (7th Cir. 1994) (emphasis added).

As a result, even if timely, a request under Rule 60(b)(1) predicated upon the allegations of prior counsel's negligence would not have been successful.  It would also be time barred under Rule 60(c)(1), as it was brought more than a year after the entry of the order in question.  Further, because this issue fits squarely within Rule 60(b)(1)—a request based on mistake, inadvertence, surprise or excusable neglect—the Debtor could not also circumvent the Rule 60(c) one-year limitation in favor of the broader, reasonable ones applicable to Rule 60(b)(6)'s catchall provision, as the law is clear that Rule 60(b)(6) cannot be used to entertain relief more properly brought under another of Rule 60's subsections.  *In re Sindesmos Hellinikes-Kinotitos of Chicago*, 607 B.R. 898, 908 (Bankr. N.D. Ill. 2019) (Barnes, J.) ("Rule 60(b)(6) …, the so-called 'catchall provision,' may not be invoked as grounds for relief for an argument that fits within the other sections of Rule 60.") (*citing Indus. Assocs., Inc. v. Goff Corp.*, 787 F.2d 268, 269 (7th Cir. 1986)).

The Debtor is not, therefore, entitled to relief under Rule 60.

9

B.        The Law of the Case

While the foregoing addresses and confirms the basis of the majority of Clark's Response, the Debtor has attempted to circumvent these considerations by making its reconsideration request in the form of a renewed motion for the relief previously denied.  This attempt fares no better as it runs afoul of the law of this case.

As the Supreme Court has stated,

> "[a]s most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (citations omitted); *Arizona v. California*, 460 U.S. 605, 618–19, *decision supplemented,* 466 U.S. 144 (1984) (the "law of the case is an amorphous concept").  The "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona*, 460 U.S. at 619 (*citing Southern Ry. Co. v. Clift,* 260 U.S. 316, 319 (1922); *Messenger v. Anderson,* 225 U.S. 436, 444 (1912)).

This court has considered the law of the case recently.  *In re Kimball Hill, Inc.*, 630 B.R. 294, 305 (Bankr. N.D. Ill. 2021) (Barnes, J.).  There it was observed that the Seventh Circuit has stated that this doctrine is not entirely "inflexible," *Delgado v. United States Dep't of Just.*, 979 F.3d 550, 557 (7th Cir. 2020), that a lower court might vary from an appellate decision where there is a "compelling reason to depart." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (*quoting Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997)).  These reasons must be "'sufficiently compelling circumstances,' such as 'subsequent factual discoveries or changes in the law.'" *Delgado*, 979 F.3d at 557 (*citing Carmody v. Bd. of Trustees*, 893 F.3d 397, 407–08 (7th Cir. 2018) (*citing EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005))).

Were the Debtor to have shown such compelling reason or circumstances, this court might have been persuaded to exercise its discretion and look past the law of the case in this matter.  As the Seventh Circuit has stated, "the 'law of the case' doctrine must yield to rational decisionmaking." *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985).

But this is a matter of discretion, *Southern Ry. Co.*, 260 U.S. at 319 (the law of the case "directs discretion"); *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018) ("The law of the case is a discretionary doctrine, not an inflexible dictate."), and the Debtor has done little to convince the court that it should exercise its discretion in favor of the Debtor.

The Debtor's argument that he was denied his day in court is unconvincing, for the reasons described above.  Further, the Debtor's attempt to circumvent Rule 60 without addressing the obvious problem it raises strikes the court as evasive.  Finally, even were the court convinced that it should revisit the matter, the Debtor has failed to explain why he has scheduled the Residence's value one way in the Petition, asserted it at another value in his Avoidance Motion and finally now asserts a third, different value with an appraiser's report that purports to value the property as of the

10

Debtor's petition date without any convincing reasoning in support thereof. The Debtor seems to believe he is entitled to keep changing his position until he finds one that works.

On the flip side of the Debtor's request, the court is not unsympathetic to Clark's having been brought before this court on the same issue multiple times. As the Seventh Circuit has pointed out, "[r]equiring a non-erring party to bear the burden of his opponent's errors may not be reasonable in many circumstances and in fact may constitute a miscarriage of justice." *Deppe*, 863 F.2d at 1361.

Though stated in the context of default judgments, the court is persuaded by the Seventh Circuit's guidance regarding holding a party to its errors, where it stated that

> [t]he idea that a default judgment may penalize the innocent and let the guilty lawyer go free is tempered by the fairly common knowledge that a viable avenue for relief exists for truly deserving litigants. Just as with other professionals, a remedy for an attorney's professional negligence is a suit for malpractice.

*Inryco, Inc. v. Metro. Eng'g Co.*, 708 F.2d 1225, 1235 (7th Cir. 1983).

## CONCLUSION

For all of the foregoing reasons, the Motion will be, therefore, DENIED, with prejudice. A separate order to that effect will be entered concurrently herewith.

Dated: March 4, 2022                    ENTERED:

_____
Judge Timothy A. Barnes
United States Bankruptcy Court

11